Miscellaneous Docket No. ___

In the
**United States Court of Appeals for the Federal Circuit**

IN RE THE RIDGE WALLET LLC,

*Petitioner.*

On Petition for Writ of Mandamus to the
United States District Court for the
District of Colorado
No. 24-cv-02447-GPG-TPO, Hon. Gordon P. Gallagher

**THE RIDGE WALLET LLC'S**
**PETITION FOR WRIT OF MANDAMUS**

Benjamin E. Weed
Gina A. Johnson
The Ridge Wallet LLC
104 Main St., Suite 2C
Park Ridge, IL 60068
(847) 456-1430

*Counsel for Petitioner*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | |
| **Short Case Caption** | In re The Ridge Wallet LLC |
| **Filing Party/Entity** | The Ridge Wallet LLC |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/20/2024

Signature: /s/ Benjamin E. Weed

Name: Benjamin E. Weed

i

| 1. **Represented Entities.**<br>Fed. Cir. R. 47.4(a)(1). | 2. **Real Party in Interest.**<br>Fed. Cir. R. 47.4(a)(2). | 3. **Parent Corporations and Stockholders.**<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| The Ridge Wallet LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable                    ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐    Yes (file separate notice; see below)    ☑    No    ☐    N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable                    ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................ 1

RELIEF SOUGHT ........................................................................... 6

ISSUE PRESENTED ........................................................................ 7

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................. 8

REASONS FOR ISSUING THE WRIT .................................................. 14

I.    The District Court Clearly Abused Its Discretion in Denying
      Ridge's Motion for a TRO ........................................................ 15

      A.    The Court committed legal error in finding that Ridge
            is not being irreparably harmed by Mountain Voyage's
            infringement ................................................................. 17

            1.    The Court committed reversable legal error by
                  imposing an "impossible" standard for preliminary
                  injunctive relief ............................................ 17

            2.    The Court committed reversable legal error in its
                  handling of Ridge's arguments about loss of market
                  share. .......................................................... 19

            3.    The Court committed reversable legal error in its
                  handling of Ridge's arguments about price erosion.... 24

            4.    The Court committed reversable legal error in its
                  handling of Ridge's arguments about reputational
                  harm. ........................................................... 25

            5.    The Court committed reversable legal error in its
                  reliance on a so-called nexus. ............................. 28

      B.    The other applicable factors clearly support a
            Temporary Restraining Order ........................................ 30

II.   The Tenth Circuit's "Guidelines" favor granting the Writ of
      Mandamus ........................................................................... 31

III.  Mandamus Is Appropriate Under The Circumstances. ............... 35

CONCLUSION ............................................................................... 38

# TABLE OF AUTHORITIES

**Case(s)**                                                                        **Page(s)**

*Am. Seating Co. v. USSC Grp., Inc.*
    514 F.3d 1262 (Fed. Cir. 2008) ...................................................... 22

*Apple Inc. v. Samsung Electronics Co., Ltd.*
    735 F. 3d 1352 (Fed. Cir. 2013) .............................................. 29, 30

*Apple Inc. v. Samsung Electronics Co., Ltd.*
    809 F. 3d 633 (Fed. Cir. 2015) ................................................ 22, 23

*Asseo v. Pan Am. Grain Co., Inc.*
    805 F.2d 23 (1st Cir. 1986) ........................................................... 19

*Big O Tires, Inc. v. Bigfoot 4X4, Inc.*
    167 F.Supp.2d 1216 (D. Colo. 2001) ............................................. 16

*Broadcom Corp. v. Emulex Corp.*
    732 F. 3d 1325 (Fed. Cir. 2013) .................................................... 17

*Cheney v. U.S. Dist. Court for D.C.*
    542 U.S. 367 (2004) ....................................................................... 14

*Douglas Dynamics, LLC v. Buyers Products Co.*
    717 F. 3d 1336 (Fed. Cir. 2013) .............................................. 16, 17

*Flynt Distrib. Co., Inc. v. Harvey*
    734 F.2d 1389 (9th Cir. 1984) ....................................................... 19

*GG ex rel. Grimm v. Gloucester County School Bd.*
    822 F. 3d 709 (4th Cir. 2016) ........................................................ 19

*Heideman v. S. Salt Lake City*
    348 F.3d 1182 (10th Cir. 2003) ......................................... 17, 18, 19

*In re Cooper Tire & Rubber Co.*

568 F. 3d 1180 (10th Cir. 2009) ..................................................... 14

*In re Qwest Commc'ns Int'l, Inc.*.
450 F.3d 1179 (10th Cir. 2006) ................................................*passim*

*Kos Pharm., Inc. v. Andrx Corp.*
369 F.3d 700 (3d Cir. 2004) ........................................................ 18

*Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*
51 F.3d 982 (11th Cir. 1995) ....................................................... 18

*Mullins v. City of New York*
626 F.3d 47 (2d Cir. 2010) .......................................................... 18

*Paramount Film Distrib. Corp. v. Civic Center Theater, Inc.*
333 F.2d 358 (10th Cir. 1965) ...................................................... 14

*Reebok Int'l Ltd. v. J. Baker, Inc.*
32 F.3d 1552 (Fed. Cir. 1994) ...................................................... 26

*SBM Site Servs., LLC v. Garrett*
2010 WL 749823 (D. Colo. Mar. 4, 2010) ....................................... 16

*SCFC ILC, Inc. v. Visa USA, Inc.*
936 F.2d 1096 (10th Cir. 1991) .................................................... 16

*Sierra Club, Lone Star Chapter v. FDIC*
992 F.2d 545 (5th Cir. 1993) ................................................... 18, 19

*Ty, Inc. v. GMA Accessories, Inc.*
132 F.3d 1167 (7th Cir. 1997) ...................................................... 18

*University of Texas v. Camenisch*
451 U.S. 390, 395 (1981) ............................................................ 18

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*
778 F. 3d 1365 (Fed. Cir. 2015) ................................................... 22

**Rule(s)**                                                        **Page(s)**

Fed. R. Civ. P. 65(b)....................................................................... 16

**Constitutional Provision(s)**                         **Page(s)**

U.S. Const., art. 1, § 8 ........................................................... 2, 17

# INTRODUCTION

Mountain Voyage is a company unabashedly built on copying Ridge's design aesthetic, product mix, and overall business model. Its founder and Chief Executive Officer, Joseph Reeves, admitted as much in a 2023 interview with Business Insider magazine:

> Reeves found a supplier through Alibaba who could manufacture the wallet he wanted, which, at the time, was a very similar style to a competitor wallet, he said: "I just emulated their product."

Appx61.

Ridge is a company that has been selling compact wallets since 2013 and is presently the largest player in that space. This is, at least in part, due to Ridge's prosecution of and assertion of intellectual property covering both the utility of and design of its market-defining compact wallets. Indeed, Ridge's intellectual property portfolio, which was nascent when Mountain Voyage "emulated" its way into the market, has grown by leaps and bounds in the past several months. Most critically, in the Summer of 2024, Ridge was granted intellectual property (in the form of a pair of design patents) that make Mountain Voyage's blatant copying of Ridge's segment-defining silhouette actionable—or so Ridge thought.

The U.S. Constitution empowered Congress to pass laws designed "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the **exclusive Right** to their respective Writings and Discoveries." U.S. Const., art. 1, § 8 (emphasis added)). Upon this basis, Ridge immediately brought its newly-issued Design Patents to Mountain Voyage's attention on the day each one issued. Appx91-95.

Faced with Ridge's assertions, Mountain Voyage chose to continue its previous path of blatant copyist, opting to do nothing to avoid infringement of the new design patents. Mountain Voyage's inaction is tantamount to compelling Ridge to grant a license to the design patents while its underlying willful patent infringement claims move glacially toward trial.[1]

Given Mountain Voyage's unwillingness to cease infringement in favor of a double-down on its "emulat[ion]" of Ridge's patent-practicing wallets, Ridge moved for a Temporary Restraining Order ("TRO") in the

---

[1] On December 17, 2024, the Colorado District Court reset the Scheduling Conference in this case to February 18, 2025, meaning that discovery will not open in earnest at least until mid to late February, compounding the irreparable harm Mountain Voyage's infringement is causing. Appx11.

District of Colorado. Appx9; Appx27-44. Ridge's submission was supported by a sworn affidavit and underlying evidence from Ridge's own Chief Executive Officer, Sean D. Frank, explaining the facts underlying the irreparable harm Mountain Voyage's continued infringement was causing, particularly heading into the busy 2024 Holiday season. Appx103-166.

Mountain Voyage did not submit a shred of evidence to show that anything Mr. Frank said about the marketplaces in which the parties play was incorrect or to otherwise call his testimony into question. This is unsurprising; its business is nothing more than one of a drop shipper, and it has no insight whatsoever into the compact wallet market that Ridge created in 2013 and that Mountain Voyage "emulated" its way into in 2021.

Notwithstanding what amounts to unrebutted testimony at a very preliminary stage of the case (far before discovery has opened), the District of Colorado denied Ridge's TRO motion, finding that Ridge had not appropriately demonstrated irreparable harm. Appx1-5. The Colorado Court stated that "[t]he burden imposed on Ridge is high and may be impossible to meet in these circumstances." Appx4. Notably,

3

however, the Court did not address *any* issues (e.g., likelihood of success on the merits, public interest) other than irreparable harm.  Appx2. This is unsurprising given that Mountain Voyage's founder has publicly admitted to "emulat[ion]" that is the basis for infringement here; he simply ordered the same product Ridge created to sell on Amazon:



Appx95.

Ridge moves this Court for the extraordinary relief of a Writ of Mandamus because if this case—with a blatant, admitted, copyist riding on Ridge's success has entered the Amazon niche Ridge created and using Ridge's keywords on Amazon.com to infringe Ridge's patents at 1/3 the price of Ridge's products—does not support a Temporary Restraining Order, no case does.

Ridge does not seek from this Court prejudgment of a preliminary or permanent injunction; it simply seeks the immediate enforcement of its exclusive rights via TRO until such time as a more fulsome factual record can be developed and briefed.  Ridge is confident the District of Colorado will see the irreparable harm sufficient to support a preliminary injunction when it gets to hear from Mr. Frank (and, more importantly, from Mountain Voyage's drop-shipper CEO), but for now it is legal error not to enter a TRO.

## RELIEF SOUGHT

Ridge respectfully requests that this Court issue a Writ of Mandamus directing the district court for the District of Colorado to enter a Temporary Restraining Order, and to set a briefing schedule on a Preliminary Injunction Motion, per Rule 65 of the Federal Rules of Civil Procedure.

## ISSUE PRESENTED

Whether Ridge is entitled to a Writ of Mandamus compelling the district court to enter a Temporary Restraining Order enjoining Mountain Voyage's willful infringement of Ridge's design patents.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ridge created the "compact wallet" market in 2013, when it introduced the first version of its compact wallet via a Kickstarter campaign.  Appx14.  Over time, substantial research and development, and the commitment to a budding intellectual property portfolio, its business steadily grew.   Today Ridge sells more than 100 million dollars' worth of compact wallets a year.  Appx113.

Mountain Voyage is a company that did not exist prior to 2021.  In 2021, its founder and Chief Executive Officer, Joseph Reeves, decided to get into the Amazon.com drop shipping business by selling knockoff Ridge wallets.  Appx53-67.  An interview he gave in 2023 describes the sum-total of his "contribution" to the economy in starting Mountain Voyage:

> Reeves found a supplier through Alibaba who could manufacture the wallet he wanted, which, at the time, was a very similar style to a competitor wallet, he said: "I just emulated their product."

Appx61.

Ridge has always been diligent in asserting its intellectual property against Mountain Voyage.  It sued Mountain Voyage for infringement of U.S. Patent No. 10,791,808 in early 2023; Mountain

8

Voyage has since designed around that utility patent. Appx127 at ¶ 70. Nevertheless, that case is ready for trial in the District of Colorado, with Ridge expecting to ask a jury in the coming months for more than $10 million in damages for Mountain Voyage's past, willful infringement. Appx28.

On October 29, 2021, with a proliferation of copyists like Mountain Voyage hitting online marketplaces like that offered by Amazon.com, Ridge filed the application that would eventually issue as U.S. Patent No. D1,036,852 ("'852 Patent"). Appx81-90. Further expanding its intellectual property portfolio, Ridge filed the application that would eventually issue as U.S. Patent No. D1,036,246 ("'246 Patent") on January 19, 2023.[2] Appx70-80. After delays at the USPTO while examiners reviewed the *inter partes* review proceedings directed to the parent U.S. Patent No. 10,791,808, the '246 Patent issued on July 23, 2024 and the '852 Patent issued on July 30, 2024. Appx71; Appx82.

Ridge sent email notification of Mountain Voyage's infringement of each of the Design Patents to Mountain Voyage on the day those

---

[2] Ridge refers to the '246 Patent and the '852 Patent collectively as the "Design Patents."

patents issued.  Appx91-95.  While Mountain Voyage acknowledged receipt of those notifications of infringement (Appx96-102), it has never changed its product design in a way to avoid willfully infringing the Design Patents.  And, more than four (4) months after their issuance, Mountain Voyage has not filed for *inter partes* review of either of the Design Patents.

Realizing that Mountain Voyage's strategic choice was to force Ridge to grant it a compulsory license for its willful infringement, Ridge undertook the effort to file a Federal patent infringement lawsuit in the District of Colorado on September 5, 2024.  Appx12-26.  In that Complaint, Ridge pled about the irreparable harm Mountain Voyage's infringement would be causing, and pled its intent to seek injunctive relief.  *See, e.g.*, Appx22; Appx24.

The next day, on September 6, 2024, Ridge moved for a Temporary Restraining Order.  Appx8.  Ridge re-filed that motion on September 13 after having met-and-conferred with Mountain Voyage.  Appx8.  Nearly a month later, on October 9, 2024, the Court finally ruled on Ridge's motion, denying the requested relief and ruling that "The Court finds that Ridge has not presented evidence sufficient to meet its burden to

show a likelihood of substantial irreparable injury."  Appx9.

The Court denied Ridge's motion for a Temporary Restraining Order without prejudice (Appx9), and so on October 28, 2024, armed with a more detailed declaration from Mr. Frank and supporting data from the various Amazon.com reporting tools Ridge uses in its day-to-day business, Ridge re-filed its Motion for a Temporary Restraining Order ("Motion").  Appx9; Appx27-44.  Mountain Voyage opposed the Motion not by submitting contrary evidence, but by arguing that Ridge's evidence was not sufficient despite the early stage of the case.  *See, e.g.*, Appx169-173.  Mountain Voyage also moved to exclude the testimony of Mr. Frank by applying trial-like evidentiary standards contrary to Tenth Circuit law.  Appx10.[3]

After the passage of more than another month, and with the Motion remaining undecided during the critical Black Friday/Cyber Monday period of 2024, the Court finally ruled on Ridge's Motion on December 9, 2024.  In denying the Motion, the Court issued an Order (the "Order") again only addressing the irreparable harm proofs.  Appx1-5.  The Order held as follows:

---

[3] The Court eventually denied the Motion to Strike as moot.  Appx10.

11

> **The burden imposed on Ridge is high and may be impossible to meet in these circumstances**. As the Court previously noted, to some extent, Ridge needs to show that people buy Mountain Voyage's products because they include the claimed ornamental design for the money clip that is alleged to infringe resulting in irreparable harm or that Ridge is somehow otherwise irreparably harmed by the infringement. *See Apple*, at 1324 ("If the patented feature does not drive the demand for the product, sales would be lost even if the offending feature were absent from the accused product."). Because Ridge has not shown it is entitled to the injunctive relief that it seeks, the Court denies the Motion.

Appx4-5 (emphasis added). What is more, the Court held that "[t]he Court will not entertain further motions for a temporary restraining order or preliminary injunction by Ridge in this case that are filed without prior authorization." Appx5.

The evidence Ridge presented is the best evidence it can present without party- or third-party- discovery. As such, if the District of Colorado's approach is correct, it has essentially adopted a regime where patent owners like Ridge cannot secure preliminary injunctive relief against willfully infringing competitors when their competitors are mere drop-shippers in non-well-defined markets. The District of Colorado's approach essentially forecloses temporary restraining order relief to companies like Ridge.

Ridge submits that the appropriate outcome would have been to grant the Motion, enter a short Temporary Restraining Order ("TRO"), and permit discovery that would ordinarily be conducted as part of preliminary injunction motion practice. That discovery would assuage Mountain Voyage's concerns, as it would confirm that Mr. Frank's testimony, as the CEO of the market-creating and largest company in the compact wallet space, reliably demonstrates irreparable harm.

The District of Colorado's approach constitutes clear legal error, and a Writ of Mandamus is the only way to address that error.

## REASONS FOR ISSUING THE WRIT

In the Tenth Circuit, three conditions must be met before a writ of mandamus may issue: (1) the party seeking issuance of the writ must have no other adequate means to attain the relief he desires; (2) the petitioner must demonstrate that his right to the writ is clear and indisputable, and (3) the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances. *In re Cooper Tire & Rubber Co.*, 568 F. 3d 1180, 1186 (10th Cir. 2009) (*citing Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004)).

While a district court erring in deciding a legal issue is an abuse of discretion (*see In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d 1179, 1184 (10th Cir. 2006)), the Tenth Circuit has found that "[t]here must be more than what we would typically consider to be an abuse of discretion in order for the writ to issue. *See Paramount Film Distrib. Corp. v. Civic Center Theater, Inc.*, 333 F.2d 358, 361 (10th Cir. 1964). In this regard, the Tenth Circuit has identified five "nonconclusive guidelines" in determining whether to issue a writ of mandamus:

(1)     whether the party has alternative means to secure relief;

(2)     whether the party will be damaged in a way not correctable

14

on appeal;

(3)     whether the district court's order constitutes an abuse of

        discretion;

(4)     whether the order represents an often repeated error and

        manifests a persistent disregard of federal rules; and

(5)     whether the order raises new and important problems or

        issues of law of the first impression.

*In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d at 1184.

As described below, the District Court here has abused its

discretion by imposing on Ridge a standard for a mere TRO that the

Court itself admits is "impossible to meet in these circumstances."

Appx4.  It has also abused its discretion because it ignored the only

evidence of record in finding that Ridge did not demonstrate irreparable

harm.  Because of the potential impact of the Court's opinion—

incentivizing ethereal companies to willfully infringe under a

compulsory license rather than respect valid intellectual property—the

Tenth Circuit's guidelines compel the issuance of a writ of mandamus.

## I.     The District Court Clearly Abused Its Discretion in Denying Ridge's Motion for a TRO

In the District of Colorado, a TRO "may issue if the movant clearly

shows: (1) a substantial likelihood of success on the merits; (2) irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm the preliminary injunction will cause the opposing party; and (4) the preliminary injunction is not adverse to the public interest." *Big O Tires, Inc. v. Bigfoot 4X4, Inc.*, 167 F.Supp.2d 1216, 1221 (D. Colo. 2001) (*citing SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991)). The moving party has the burden of making a *prima facie* showing of a probable right to the ultimate relief and a probable danger of injury if the motion is denied. *Big O Tires*, 167 F.Supp.2d at 1221. A party seeking a TRO must clearly demonstrate that immediate and irreparable injury will result absent a TRO. *SBM Site Servs., LLC v. Garrett*, 2010 WL 749823, at *1 (D. Colo. Mar. 4, 2010); Fed. R. Civ. P. 65(b).

This Court has explained that in the context of patent infringement, "[s]imply because a patentee manages to maintain a profit in the face of infringing competition does not automatically rebut a case for irreparable injury." *Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F. 3d 1336, 1344 (Fed. Cir. 2013). Where parties are competing, irreparable harm is likely to result from patent

16

infringement. *Id.* at 1345. Loss of market share is also likely to support a finding of irreparable harm in the context of patent infringement by a competitor. *Broadcom Corp. v. Emulex Corp.*, 732 F. 3d 1325, 1337 (Fed. Cir. 2013). These ideas all rightly reflect the Constitutionally mandated patent exclusivity (U.S. Const, art. 1, § 8), and demonstrate that Ridge should not be forced to license its Design Patents to Mountain Voyage while the case proceeds, especially since Mountain Voyage likely will not have assets to satisfy an eventual judgment as to the price of that compulsory license.

The only prong of the standard for preliminary injunctive relief / temporary restraining order relief addressed in the Order is the second prong regarding irreparable harm. Appx1-5. Accordingly, this Petition focuses heavily on that prong.

### A.    The Court committed legal error in finding that Ridge is not being irreparably harmed by Mountain Voyage's infringement

1.    The Court committed reversable legal error by imposing an "impossible" standard for preliminary injunctive relief

The Tenth Circuit recognizes the limited evidentiary record that exists at the TRO stage of a case. *Heideman v. S. Salt Lake City*, 348

17

F.3d 1182, 1188 (10th Cir. 2003). Unlike trial proceedings or even

motions for summary judgment, TRO motions are inherently

preliminary and focus on preventing irreparable harm before a full

adjudication of the merits. *Id.* Accordingly, "[t]he Federal Rules of

Evidence do not strictly apply to preliminary injunction hearings, and

the trial court may rely on hearsay and other evidence that would not

be admissible at trial." *Id.*

The Supreme Court has similarly observed that "a preliminary

injunction is customarily granted on the basis of procedures that are

less formal and evidence that is less complete than in a trial on the

merits." *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct.

1830, 68 L.Ed.2d 175 (1981). It is thus unsurprising that the majority

of other Circuits have similarly held that relaxed evidentiary standards

are appropriate at early stages of cases, such as in the context of a TRO

motion. *See Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010);

*Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004); *Ty,*

*Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997); *Levi*

*Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir.

1995); *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th

Cir. 1993); *Asseo v. Pan Am. Grain Co., Inc.*, 805 F.2d 23, 26 (1st Cir.

1986); *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir.

1984); *GG ex rel. Grimm v. Gloucester County School Bd.*, 822 F. 3d 709,

726 (4th Cir. 2016).

Notwithstanding, the District of Colorado held Ridge to a

heightened evidentiary standard, essentially requiring it to present

trial-ready evidence of irreparable harm. Appx1-5. This can be seen by

the Court's recognition that it is "impossible" for Ridge to meet that

burden "in these circumstances." Appx4.

The Court's framework, which would make it impossible for

companies that exist in markets that do not present ready access to

competitor data, constitutes legal error. Since Mr. Frank's declaration

is the only evidence of record regarding the issue of irreparable harm,

and since Mountain Voyage has not submitted *any* contrary evidence,

mandamus is warranted. *Heideman*, 348 F.3d at 1188.

> 2. The Court committed reversable legal error in its
>    handling of Ridge's arguments about loss of market
>    share.

Mr. Frank explains in great detail Ridge's unique situation as a

market-creator. Appx104-105 at ¶¶ 7-8. He explains that Ridge

created the market for the compact wallets now vastly known as "Ridge wallets," and as a result, and that Ridge's work has resulted in a "niche" on Amazon.com called "ridge wallets for men." *Id.* He explains that Ridge, Mountain Voyage, and other competitors have their products slotted into the Amazon-created category that bears Ridge's name. He goes on to explain all the ways Mountain Voyage's infringement harms Ridge in terms of lost market share. Appx112-120 at ¶¶ 28-50.

Based on Amazon seller data regarding click share, Mr. Frank and Ridge's Amazon team have estimated that Mountain Voyage maintains approximately 24.55% of the market for compact wallets in the Ridge wallet niche on Amazon, while Ridge maintains approximately 59.81% of the same. Appx112-113 at ¶¶ 29-32. What this evidence means is that the remaining dozens of market participants *together* make up only 15% of the market (aside from Ridge and Mountain Voyage). *Id.* He explains that the data he used to calculate those numbers is the best available data. Appx113 at ¶ 32. And he backs his calculation up using "Seller Sprite" data about Mountain Voyage, and actual sales data about Ridge. Appx113-114 at ¶¶ 35-37. Mountain Voyage does not dispute that contention, and the Order (which does not address Amazon

data at all) seems only to address this point by saying that Ridge's arguments "relate only to the broader compact wallet market." Appx4. But as noted, the *only* evidence of record is Mr. Frank's testimony that the data is the best available data (Appx113 at ¶ 32), and it is certainly supportive of a TRO.

Mr. Frank also explains that Ridge's current sub-brand strategy would be unnecessary without Mountain Voyage's infringement (Appx114-115 at ¶¶ 38-39), and explains the loss in market share caused by the fact that a search for "Ridge wallet" on Amazon.com returns hits for Mountain Voyage's products at a fraction of the price of Ridge's products. Appx115 at ¶ 40. In Mr. Frank's words:

> But this is just another example of Mountain Voyage's impact on our potential customer base: people go to Amazon looking for a Ridge wallet and end up with a Mountain Voyage wallet despite searching for our brand name. The biggest problem is that since Mountain Voyage's products look just like our products, the customer thinks they are getting a Ridge wallet, but they are not.

*Id.*

Finally, Mr. Frank explains in great detail the reality that with Mountain Voyage selling knockoff (infringing) wallets, the cost to obtain new customers has increased drastically. Appx116 at ¶¶ 41-42. Thus,

the share of the market Ridge can acquire for the same advertising spend shrinks due to Mountain Voyage bidding on the keyword "ridge wallet." *Id.* Absent Mountain Voyage's infringement, Ridge's market share would be far larger based on the same advertising spend, demonstrating irreparable harm.

The Order addresses Ridge's argument about loss of market share with a strange reference to convoyed sales. Appx2-3. But Ridge is not arguing about convoyed sales – which would focus on profits Ridge could ostensibly recover from Mountain Voyage's sale of *non-infringing* products in connection with (convoyed with) its *infringing* products. *See, e.g.*, *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F. 3d 1365, 1375 (Fed. Cir. 2015) (*citing Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008)).

Quite the opposite, Ridge is arguing that it is irreparably harmed by Mountain Voyage's infringement due to the same "ecosystem effect" and "network effect" discussed by this Court in the context of Apple and Samsung:

> We agree with the district court's analysis. Sales lost by Apple to Samsung are difficult to quantify due to the "ecosystem effect" — that is, the effect the sale of a single product can have on downstream sales of accessories,

22

computers, software applications, and future smartphones and tablets…In addition to the downstream sales to the individual customer, Mr. Schiller testified that individual customers have a "network effect," by which they advertise Apple's product to their friends, family, and colleagues…Thus, the loss by Apple of a single smartphone or tablet customer may have a far-reaching impact on Apple's future revenues. Because of its variable and uncertain nature, this loss is very difficult to calculate.

*Apple Inc. v. Samsung Electronics Co., Ltd.*, 809 F. 3d 633, 645 (Fed. Cir. 2015).

By never entering the Ridge ecosystem, a would-be Ridge customer that becomes a Mountain Voyage customer is lost to the ecosystem, reducing Ridge's market share. Appx113 at ¶ 33, Appx119 at ¶ 47. It is legal error to apply a convoyed sales argument related to damages to the argument Ridge makes that a sale to Mountain Voyage has a much harsher and less tangible impact on Ridge's business than the 1:1 loss of a wallet sale. Appx2-3.

The record establishes that Mountain Voyage's infringement is the only meaningful impact to Ridge's market share on Amazon by a single, tangible seller. The only conclusion that can be drawn from the only evidence of record is that Ridge uniquely loses market share when Mountain Voyage is allowed to sell compact wallets that infringe the

Design Patents.  Appx112-120 at ¶¶ 28-50.  It is the only competitor of

meaningful size, and when it captures wallet customers those

customers are no longer available to Ridge (for wallets or other products

in Ridge's ecosystem whose entry point is a wallet purchase).  Appx112-

113 at ¶¶ 28, 33.  This is not mere "competition in the marketplace," as

the Order asserts; it is loss of market share due to blatant, willful,

patent infringement.  *See* Appx4.

      3.     The Court committed reversable legal error in its
             handling of Ridge's arguments about price erosion.

     Mr. Frank also explains the price erosion Ridge experiences by

virtue of Mountain Voyage's infringement of the Design Patents.

Appx118-119 at ¶¶ 43-46.  He explains that because Mountain Voyage's

products look just like Ridge's products, and show up when customers

search for "ridge wallet," the lower price of Mountain Voyage's products

compels Ridge to lower its own prices (or discount its products) to

compete.  *Id.*

     The Order responds to these arguments by stating that "identified

products do not appear to have money clips (D. 32-21 at 17) ("Matte

Black SKU" and "Gunmetal SKU")."  Appx4.  But Mr. Frank's

declaration, to which the Order cites, is clear that it is discussing

"money clip" versions of the matte black and gunmetal wallets. Appx118 at ¶ 45. The court also committed legal error in the footnote citation supporting this erroneous conclusion (Appx4 at FN4); that evidence is from Amazon.com, and indicates how *Amazon sellers* describe their products in the product name. Appx149-150.

As such, the Court should have credited Mr. Frank's testimony that when the consuming public believes that it can buy what it believes to be a "Ridge" wallet for $30 or $40, the price the consuming public is generally willing to pay is eroded and cannot be made back up. Appx118-120 at ¶¶ 43-49. And while Ridge is trying to mitigate this harm with its own sub-brands that compete with Mountain Voyage (at the Mountain Voyage price point), in actuality Ridge is merely re-cannibalizing sales that Mountain Voyage cannibalized from Ridge in the first place. Appx118-119 at ¶¶ 45-46. Ridge submits that it is legal error to conclude (to the extent the Order did) that its attempt to mitigate irreparable harm indicates that irreparable harm is not occurring. This issue goes away entirely if Mountain Voyage's infringement is prohibited by Court order. Appx114 at ¶ 38.

4.    The Court committed reversable legal error in its handling of Ridge's arguments about reputational

25

harm.

As this Court has held: "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994). Ridge has concrete evidence of this loss of brand goodwill, which the Order wrongly discounted or ignored. Appx120-128 at ¶¶ 51-72.

The most glaring example Ridge experiences first-hand relates to returns of products. Ridge proudly offers its products with a lifetime warranty, and often sees customers trying to return non-Ridge wallets to Ridge for service. Appx123-128 ¶¶ 59-72. Mr. Frank explains a real-life example, with which he is familiar, in which an individual approached a Ridge representative at a trade show and complained about his Ridge wallet being broken and of poor quality. Appx124 at ¶¶ 60-62. Ridge's representative had to tell the disappointed customer that he did not own a Ridge wallet, but rather owned a Mountain Voyage wallet. *Id.* This concrete example demonstrates a customer so disappointed as to approach Ridge at a trade show, only to learn that

his disappointment was not with a Ridge product at all.  This disappointment in a knockoff product acutely demonstrates harm to reputation caused by confusion between brands.  *Reebok,* 32 F.3d at 1558).

Mr. Frank also included Exhibit C to his declaration, which is a document demonstrating actual consumer confusion collected by Ridge's customer service team.  Appx124 at ¶ 63; Appx151-166.  In particular, this document contains consumer feedback expressing surprise that they had not actually purchased a Ridge wallet, and often expressing dismay at the quality of the thing they purchased (a Mountain Voyage wallet).  *Id.*

The Order largely ignored this evidence, which plainly demonstrates the reputational harm that is caused by Mountain Voyage being permitted to sell infringing, knockoff products.  Appx1-5.  It did so by focusing on a single review from a user not dissatisfied with the quality of a Mountain Voyage product.  Appx3.  It also dismissed Mr. Frank's sworn testimony in a footnote (Appx3 FN 2), but in addition to simply ignoring sworn testimony from the CEO of the world's largest compact wallet company, the Court erred in ignoring actual customer

feedback submitted with the Motion. Appx151-166. The Court's legal error on this issue begins with simple ignoring of the record evidence.

Moreover, even if not everybody is upset with the Mountain Voyage product does not change the reputational harm Ridge suffers because Mountain Voyage is currently being allowed to sell low-quality knockoff products. It is legal error to ignore that reputational harm in view of this Court's precedent, especially by finding a review where a user was happy he could not drill a hole in a piece of metal.

     5.    The Court committed reversable legal error in its reliance on a so-called nexus.

With regard to the Order's discussion of "causal nexus," Mr. Reeves admitted that nexus existed when he said that his business is built on emulating Ridge's product design. Appx61. The fact that at least the '852 Patent claims the overall look of the Ridge wallet product (i.e., the thing Mr. Reeves emulated) demonstrates that there is a causal nexus between the infringement and the harm. Appx81-90. And the fact that Mountain Voyage does not simply go the way of other past infringers, and either cease-and desist or redesign to a different compact wallet that does not copy Ridge's patent-practicing product, demonstrates that it is aware of that causal nexus. Appx107 at ¶ 16;

Appx49 at ¶¶ 25-27.

This Court has explained in the context of a dispute between Apple and Samsung that

> Thus, rather than show that a patented feature is the exclusive reason for consumer demand, Apple must show some connection between the patented feature and demand for Samsung's products…it might be shown with evidence that the absence of a patented feature would make a product significantly less desirable.

*Apple Inc. v. Samsung Electronics Co., Ltd.*, 735 F. 3d 1352, 1354 (Fed. Cir. 2013). The evidence presented (including Mountain Voyage's unwillingness to change its design) demonstrates to be "some connection" between the patented feature and the demand for the product to establish the requisite causal nexus. *Id.* And the Order itself runs afoul of this Court's further guidance:

> [A patentee need not] show that a patented feature is the one and only reason for consumer demand. Consumer preferences are too complex— and the principles of equity are too flexible—for that to be the correct standard. Indeed, such a rigid standard could, in practice, amount to a categorical rule barring injunctive relief in most cases involving multifunction products, in contravention of eBay.

*Id.*

The Order includes a footnote regarding a competitor's ease in designing around the Design Patents. Appx4-5 at FN4. The Court

incorrectly concludes that this choice not to infringe Ridge's intellectual property "suggests that the ornamental money clip design has a limited role in customer purchasing decisions." *Id.* To the contrary, the fact that Mountain Voyage—Ridge's biggest competitor—has decided *not* to design around the Design Patents and avoid costly litigation demonstrates precisely the value to Mountain Voyage in "emulat[ing]" Ridge's market-creating silhouette.[4] Appx110-111 at ¶¶ 25-27.

## B.    The other applicable factors clearly support a Temporary Restraining Order

The Order does not address any of the other factors briefed below. Appx1-5. The infringement is clear (Appx33-34; Appx186-187). There is also no credible invalidity argument for these recently-issued patents. Appx34-36; Appx187-190). The public interest factors, primarily related to preventing drop-shippers like Mountain Voyage from being able to compel market-creating patent owners to grant royalty-bearing licenses in the face of willful infringement. Appx42; Appx194

The fact that Mountain Voyage's knockoff business model would

---

[4] While it is not a part of the evidentiary record below, Ridge submits that this Court can conduct a simple search for "Sorax" on Amazon.com to verify that, as of now, Sorax has ceased selling *anything* on Amazon.com.

be impacted by enforcing Ridge's intellectual property is NOT a reason to find that the harm to Mountain Voyage weighs against granting the injunctive relief; were that the case, any requested injunctive relief important enough to warrant the filing of a Federal lawsuit would counsel against granting a TRO.

## II.    The Tenth Circuit's "Guidelines" favor granting the Writ of Mandamus

Given the District of Colorado's legal error in finding that it is impossible for Ridge to show irreparable harm under these circumstances, mandamus is warranted.  The "guidelines" promulgated by the Tenth Circuit confirm that Mountain Voyage should not be able to compel Ridge to license the Design Patents while the case proceeds to eventual trial in several years.  *In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d at 1184.

The first Tenth Circuit "guideline" asks whether Ridge has alternative means to secure relief.  *In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d at 1184.  The answer is clear from the Court's Order:  The District of Colorado Court has told Ridge it may no longer request preliminary injunctive relief without leave of Court.  Appx5.  Since the scheduling conference in the District of Colorado was recently reset from November

until the *end of February* (Appx11), Ridge will have no access to discovery to even request that leave until the Spring, 2025.

Also, Amazon.com has already told Ridge it will not help Ridge enforce its intellectual property against Mountain Voyage. Appx48 at ¶¶ 20-22; Appx110 at ¶ 23.

Ridge sued Mountain Voyage in the District of Colorado in February, 2023, and is STILL waiting on the court to set a trial date, almost two years later. Particularly in view of Ridge's pending claim for damages in that case, Mountain Voyage's solvency is not guaranteed by any means; in two years from now, it is highly doubtful Mountain Voyage will be collectable for its liabilities to Ridge for the compulsory license Ridge is being forced to grant to the Design Patents.

As such, mandamus is the sole avenue for Ridge to obtain relief with respect to its requested TRO and not be subjected to the compulsory license Mountain Voyage's willful infringement is currently imposing upon Ridge.

Ridge will also be damaged in a way not correctable on appeal, so the second Tenth Circuit guideline favors mandamus. *In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d at 1184. Mountain Voyage is currently

operating under a license that Ridge is compelled to give it during the pendency of the lawsuit.  Appellate relief in two or more years cannot put the toothpaste back into the tube, so to speak, and at best for Ridge a jury in 2026 will decide the price for the license Ridge was compelled to grant.  Particularly since Ridge suspects that discovery will reveal that Mountain Voyage will not be collectable, the second Tenth Circuit guideline favors the requested writ.

As noted above, Ridge submits that the District Court's Order constitutes an abuse of discretion, so the third Tenth Circuit factor favors the requested relief.  *In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d at 1184.  The only evidence of record shows that Ridge is suffering irreparable harm; that the nature of Ridge's business is not the same as a dispute between Apple and Samsung (or even two other publicly-traded companies) should not be a reason to deny the requested TRO. The Court abused its discretion because it did not credit the sole evidence before it, instead finding that the requested relief was "impossible" to achieve, so this guideline favors Ridge.

The Court's ruling manifests a disregard of Federal Rules that, if often reproduced, could have dire impact.  *In re Qwest Commc'ns Int'l,*

*Inc.*, 450 F.3d at 1184. In the e-commerce space, most knockoff artists are ethereal, foreign entities that operate solely on Amazon.com. The Court's ruling below means it is essentially impossible to obtain early injunctive relief, even where the infringer is the biggest competitor of the brand owner. The Court's ruling will lead to further, flagrant disregard for patent rights because infringers will know that they can continue to infringe, without fear of being stopped by court order, until such time as a judgment is rendered. And where companies like Mountain Voyage have no real assets, there is little fear of the impact of such judgment (even in the rare situations, as here, where the infringer is domestic).

For many of the same reasons, the Order raises new and important problems or issues of law of the first impression, in satisfaction of the fifth Tenth Circuit factor. *In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d at 1184. Cases where e-commerce patent owners assert their patents against infringers are rare because infrequently is the competitor such a threat, on its own, that assertion is economically warranted. This situation is even more rare because Ridge is the creator of the market in which Mountain Voyage now plays (albeit by

"emulation"). But as market creators with their own intellectual property turn more and more to the courts, the impact of the District of Colorado's ruling will become even more widely felt. The risk that an infringer, without submitting a shred of evidence, can avoid even a temporary restraining order (for a mere fourteen (14) days) presents a very welcoming environment for flagrant infringers (like Mountain Voyage) who disregard domestic IP rights.

For these reasons, each of the Tenth Circuit's "guidelines" favor granting the requested relief, and issuing a writ to the District of Colorado compelling it to enter a Temporary Restraining Order and set a briefing and discovery schedule for a preliminary injunction motion.

## III.  Mandamus Is Appropriate Under The Circumstances.

Mandamus is also appropriate under the circumstances because the district court clearly abused its discretion and reached a patently erroneous result—and one that may reach beyond the immediate case.

Indeed, Ridge submits that the district court's decision provides a pathway to permitting willful infringement under a compulsory license for defendants in relatively undefined markets (e.g., those where the participants are not publicly traded). Importantly, allowing Mountain

Voyage to continue under a compulsory license when it exists solely

because it copied Ridge's product offering will incentivize future

infringers to do the same thing.  Companies like Ridge, who have valid,

enforceable intellectual property that is clearly infringed by knockoff

artists, will not have meaningful relief available to them in the District

Courts because defendants can simply force patent owners to take

compulsory licenses, infringe until trial (if that ever occurs), and then

become insolvent and vaporize prior to an enforceable judgment.

For companies like Ridge, early injunctive relief (such as through

TROs) is the only meaningful relief that can be granted to prevent

cannibalization of market share and erosion of pricing strategies while

giving the infringer time to profit and make itself judgment proof.

Where a Court will not credit unrebutted and unopposed evidence of

irreparable harm, that relief becomes effectively impossible to obtain.

Mountain Voyage's complaints that it will be put out of business

with a TRO highlight the fact that Mountain Voyage brings *nothing* to

the economic table beyond copying Ridge's work and selling at a lower

price point.  Appx167.  Those complaints also ignore the simple

solution, which is to change the design of the product to sell a non-

infringing version (of which there are many).

Mountain Voyage's arguments highlight the appropriateness of a TRO, and Ridge submits that mandamus relief from this Court is appropriate under the circumstances.

# CONCLUSION

By finding that the requested relief is impossible, the Court is imposing a situation where Ridge (and other similarly situated patent owners) MUST license their intellectual property to even the most blatant knockoff artists/willful infringers for as much time as it takes to reach a final judgment. This is especially dangerous given the low barrier to entry presented by the ability to buy from Chinese manufacturers and sell on Amazon.com for a few hundred dollars. *See* Appx53-67 It is also telling Ridge (and other similarly situated patent owners) that they must gamble that all the money they spend to reach that judgment will be worthwhile in the form of a collectable defendant come judgment time. This cannot be the situation envisioned by the Constitution of the United States of America, and epitomizes the reasons why Mandamus relief is warranted here.

Respectfully Submitted,

/s/ Benjamin E. Weed
Benjamin E. Weed
Gina A. Johnson
The Ridge Wallet, LLC
104 Main St., Suite 2c
Park Ridge, IL 60068
(847) 456-1430

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the

Clerk of the Court for the United States Court of Appeals for the

Federal Circuit by using the appellate CM/ECF system on December 20,

2024.

A copy of the foregoing was served upon the following counsel of

record and district court judge via FedEx:

K.C. Groves, Esq.
Timothy G. Atkinson, Esq.
Lidiana Rios, Esq.
IRELAND STAPLETON PRYOR & PASCOE, PC
1660 Lincoln Street, Suite 3000
Denver, Colorado 80264
(303) 623-2700
kcgroves@irelandstapleton.com
tatkinson@irelandstapleton.com
lrios@irelandstapleton.com

Justin S. Greenfelder, Esq.
BUCKINGHAM, DOOLITTLE & BURROUGHS, LLC
4277 Munson St. NW
Canton, Ohio 44718
(330) 492-2625
jgreenfelder@bdblaw.com

Hon. Gordon P. Gallagher
United States District Court for the District of Colorado
Wayne Aspinall Federal Building
402 Rood Avenue
Grand Junction, CO 81501

Telephone: (970) 241-8932

Hon. Gordon P. Gallagher
United States District Court for the District of Colorado
Wayne Aspinall Federal Building
402 Rood Avenue
Grand Junction, CO 81501
Telephone: (970) 241-8932

*/s/ Benjamin E. Weed*
Benjamin E. Weed
*Counsel for Petitioner*

**CERTIFICATE OF COMPLIANCE**

The petition complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because this petition contains 6,732 words.

This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook 14-point font.

*/s/ Benjamin E. Weed*
Benjamin E. Weed
*Counsel for Petitioner*